# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ALBERTA R. GACKE,<br><br>　　　　Plaintiff,,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. C08-4061-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　This matter is before the court for judicial review of the defendant's decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act. The plaintiff Alberta Gacke protectively filed her applications on April 7, 2006, alleging disability since March 24, 2006. Her applications were denied initially and on reconsideration. She had a hearing before an Administrative Law Judge ("ALJ") on February 26, 2008. On March 31, 2008, the ALJ issued his decision, finding that Gacke was not disabled because she could return to her past relevant work as a waitress. On June 12, 2008, the Appeals Council denied Gacke's request for review, making the ALJ's decision the final decision of the Commissioner.

　　　　Gacke filed a timely Complaint in this court seeking judicial review of the ALJ's ruling. She argues the ALJ erred in finding her mental impairments do not meet the requirements of Listings 12.04 and 12.08. She also argues substantial evidence in the record establishes that her physical impairments, together with her mental impairments, preclude her from working as a waitress.

　　　　On September 11, 2008, with the parties' consent, Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The issues before the court are whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court will consider the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Gacke lives with her husband in Spencer, Iowa. She is a high school graduate, and has four grown children. She is about 5'5" inches tall, and weighs 205 pounds, although her weight has been as high as 240 pounds. She is being treated for diabetes but has not yet suffered any complications from the condition. At the time of the hearing, she was 52 years old.

Her last job was as a waitress. On March 23, 2006, after working at this job for three years, she quit after her employer cut her work schedule to two days a week. He told her he did this because her work ethic had "gone downhill." She testified that after leaving her job, she became suicidal, although those thoughts passed after a few weeks.

She testified she has trouble with her right shoulder as a result of three falls over the years. She also has aches in her legs and lower back. However, no doctor has diagnosed any medical cause for these conditions. She testified she can walk for ten minutes before she has pain, and she has to rest for five or six minutes before she can walk some more, but then her legs, thighs, and lower back will hurt while she walks. She does the laundry and some cleaning, but because of her back, she cannot vacuum. She does the cooking and grocery shopping. She also does some cleaning and helps put away the food, but her husband does the dishes. About three days a week, she is involved in church activities, one or two hours each day. She takes Tylenol PM every night to help with sleeping, and Celexa to help control her "racing thoughts."

Gacke does not feel she would be able to work full time as a waitress because it would be too stressful. She testified she would be unable to work at any job, including less stressful ones, because she "couldn't be on [her] legs very long," and she is forgetful and "can't think."

Nancy Howe, a psychiatric nurse practitioner, testified at the hearing on behalf of Gacke. She started seeing Gacke professionally in late 2005 or early 2006, but she knew Gacke when Gacke worked as a waitress. According to Howe, customers did not want to be seated in Gacke's section because she was slow and sometimes would forget the customer's order. Howe testified that Gacke struggles with depression related to bipolar disorder. She also has memory problems similar to early dementia, and she suffers from psychomotor slowing, possibly from her medication or from her cognitive function. Howe testified it would be "very difficult" for Gacke to function in a competitive workplace because of memory problems and poor concentration. However, she has not administered any tests to Gacke to measure her memory or concentration.

A vocational expert (VE) testified at the hearing. The ALJ asked the VE the following question:

> Okay, assume with me you're looking at an individual for Social Security purposes who is in that age bracket between 50 and 55, high school educated[,] has a work history as you summarized, has medically-determined impairments that cause the same work-related limitations described by the claimant. What if anything is the vocational effect of her testimony given full weight and credibility?

R. 69. The VE indicated the hypothetical individual would not be able to work as a waitress because of a combination of "poor walking tolerance" and her mental impairments. He also testified that she would not be competitively employable.

The ALJ then asked the VE a second hypothetical question:

> [A]ge, education, and work experience being the same as before. . . . What if a person could occasionally lift or carry 50 pounds, frequently 25 pounds; could stand, walk, or sit

3

> with normal breaks about six hours of an eight-hour day; push/pull is unlimited. [P]ostural activities could be performed frequently except no climbing of ladders, ropes, or scaffolds; no manipulative or visual limitations; no communicative or environmental limitations.[1]

R. 70. The VE testified that the hypothetical individual would be able to perform a full range of medium work, including work as a waitress. The VE further testified that if the individual was not more than slightly impaired in making personal, social, and occupational adjustments in the job setting, it would not affect her working as a waitress.

The ALJ then asked the VE to review a Functional Capacity Evaluation prepared for Gacke's attorney by the Buena Vista Regional Medical Center on November 15, 2007. R. 297. Based on this evaluation, the VE concluded that, from a physical standpoint, Gacke would not be able to work as a waitress, but she would be capable of performing other light jobs.

The ALJ found that Gacke has a long history of obesity, attributable to medication she takes for a bipolar disorder diagnosed 22 years earlier, and her obesity "causes more than slight or minimal limitations on [her] ability to perform work-related activities and, accordingly, this condition is 'severe.'" R. 12. However, the ALJ found Gacke worked as a waitress despite her obesity, and stopped working due to symptoms stemming from her mental impairments, not because of her obesity. *Id*. He also found that her other alleged impairments and conditions, even when considered in combination, are not severe. R. 12-13, 15.

The ALJ relied heavily on a report from Stephen Richards, D.O., who physically examined Gacke for Social Security purposes on May 22, 2006. R. 234-240. Dr. Richards concluded Gacke probably does not have any medical problems that would preclude her from working, other than her morbid obesity. R. 237. The ALJ found that

---

[1] These restrictions were taken from a physical RFC assessment by a state agency physician dated August 18, 2006. R. 259-66.

despite Gacke's obesity, she is not disabled, and her claims of disability as a result of her obesity are not credible. R. 23.

The ALJ addressed Gacke's history of mental impairments, and concluded these impairments do not satisfy the requirements of the Listings. R. 18-21. He found that even when considered in combination, her mental impairments are not "severe" within the meaning of the Social Security Act. R. 15, 21. He concluded that Gacke is capable of performing her past relevant work as a waitress. R. 23-24.

Gacke argues briefly and without conviction that her physical limitations require a finding of disability. Doc. No. 11, p. 6. She argues that if the ALJ had accepted her testimony concerning the extent of her limitations, he would have been required by the testimony of the VE to find her unemployable. The argument is without merit. The ALJ found that Gacke's testimony concerning the extent of her impairments was not credible. Therefore, the ALJ was not required to accept testimony of the VE that was based on those impairments. The ALJ was only required to consider impairments he found to be supported by the record. *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (hypothetical question is "sufficient if it sets forth the impairments which are accepted as true by the ALJ"); *House v. Shalala*, 34 F.3d 691, 694 (8th Cir. 1994). In any event, "the testimony of a vocational expert is not required to establish that a claimant can return to her former work." *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001). In *Banks*, the court held:

> We begin by noting that it is clear in our circuit that vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work. *See Gowell [v. Apfel]*, 242 F.3d [793,] 799 [(8th Cir. 2001)]; *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994). Vocational expert testimony is not required until step five when the burden shifts to the Commissioner, and then only when the claimant has nonexertional impairments, which make use of the medical-vocational guidelines, or "grids,"

> inappropriate. *See Beckley v. Apfel*, 152 F.3d 1056, 1069 (8th Cir. 1998); *Johnson v. Shalala*, 42 F.3d 448, 452 (8th Cir. 1994).

*Id.* The *Banks* court further clarified that although the Eighth Circuit has noted, in passing, that vocational expert testimony is "relevant at steps four and five of the Commissioner's sequential analysis," the court has not required vocational expert testimony at step four. *Id.* The ALJ's decision that Gacke is not disabled by her physical limitations, either alone or in combination with any other impairments, is supported by substantial evidence in the record.

Gacke argues more forcibly that the ALJ erred in not finding her disabled under the "Listings" because of her mental impairments. The Commissioner's Listing of Impairments describes, for each of the body's major systems, impairments the Commissioner considers "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a) (2006). Gacke argues she is disabled under both Section 12.04 (Affective Disorders[2]) and Section 12.08 (Personality Disorders[3]) of the Listings. Both of these Listings contain paragraph A criteria (a set of medical findings) and paragraph B criteria (a set of impairment-related functional limitations). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 "Mental Disorders."

The ALJ found Gacke's condition satisfies the criteria of paragraph A for both of these Listings. However, the Listings also require that the disorder result in at least two

---

[2] "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."

[3] "A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness."

of the following three criteria under paragraph B for any twelve-month period after her disability onset date:

   1.   Marked restriction of activities of daily living; or

   2.   Marked difficulties in maintaining social functioning; or

   3.   Marked difficulties in maintaining concentration, persistence, or pace. . . .

*Id.*, §§ 12.04(B), 12.08(B); *see* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).[4] Alternatively, the disorder must show repeated episodes of decompensation, each of extended duration, with marked limitation in at least one of the three above areas. *Id*. The ALJ found that at worst, Gacke's limitations under each of the above three criteria are only "mild," and accordingly, he denied Gacke's claim for benefits.

With regard to restrictions on Gacke's activities of daily living, the ALJ noted that less than a month after Gacke stopped working, she completed a "Function Report" in which stated she felt "happiness and contentment." R. 17. She stated she is able to prepare simple meals, do the laundry, and shop for groceries. She often makes meals that will last for three days so she will not have to cook as often. R. 18. She regularly attends church, exercises, goes to church, and attends bible meetings. She enjoys watering her plants and putting pictures in photo albums. R. 18-19. In her testimony, she stated she continues to study her bible lessons daily, and she attends bible meetings three times per week. She also spends two hours each week at evangelism. Based on this evidence, the ALJ concluded that Gacke's mental impairments place no more than mild limitations on her activities of daily living. R. 19. This finding is supported by substantial evidence in the record. *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 446 (8th Cir. 2004) (deferential review of ALJ's findings applicable to the Listings); *but see Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("This court has repeatedly stated that a person's ability to

---

[4]The possible levels of impairment under the Listings are none, mild, moderate, marked. or extreme.

7

engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.").

Social functioning refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C2. It can include a claimant's ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. *Id*. The ALJ noted Gacke is extensively involved in church activities, has a successful marriage, has "comfortable" interaction with nurse Howe, and exhibits logical and goal directed speech. R. 19. Based on this evidence, the ALJ concluded that Gacke's mental impairments place no more than mild limitations on her social functioning. R. 19-20. This finding also is supported by substantial evidence in the record.

With regard to the third criteria, the ALJ found that Gacke's difficulties in maintaining concentration, persistence, or pace have placed no more than mild limitations on her ability to work, noting as follows:

> The record documents that claimant, in the few months prior to her alleged disability onset date, was having problems concentrating, she was easily distracted, and she had trouble remembering things and completing tasks. However, the record reflects that claimant, within a short time after her alleged disability onset date, was able to sustain her attention long enough to study her bible lessons, read the bible, and prepare meals. She has also been able to drive, shop for groceries, and participate in her bible study classes three times per week. These activities clearly require claimant to engage in sustained attention and persistence to task. Based on the record in its entirety, the undersigned concludes that claimant's mental impairments have never placed more than slight or mild limitations [o]n claimant's ability to concentrate and maintain adequate persistence and pace for any consecutive twelve-month period subsequent to March 24, 2006, her alleged disability onset date.

8

R. 20. Most of this evidence does not really relate to "concentration, persistence, or pace," but to Gacke's daily activities. There is substantial evidence in the record to support Gacke's claim that she has marked limitations in this area. *See* Report of Nurse Howe, p. 3, attached to Doc. No. 11.

Finally, the ALJ turned to whether Gacke has suffered from repeated episodes of decompensation in work or work-like settings. If she has suffered from these episodes, then, because the record establishes that she also has marked limitations in maintaining concentration, persistence, and pace, she has satisfied the requirements of the Listings. The ALJ found that the record contains no evidence of episodes of decompensation for any extended duration. R. 20. The court agrees.[5] Thus, the ALJ correctly found that Gacke is not disabled for purposes of the Social Security Act.

Accordingly, the Commissioner's decision is **affirmed**, and judgment will be entered in favor of the Commissioner and against Gacke.

**IT IS SO ORDERED.**

**DATED** this 28th day of September, 2009.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[5]In fact, in her brief to this court, Gacke fails to cite any such incident. Doc. No. 11. pp 4-5.